**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**TIM AND RHONDA ALLDREAD** **PLAINTIFFS**

**V.** **NO. 4:26-CV-56-DMB-JMV**

**ALLSTATE VEHICLE AND**
**PROPERTY INSURANCE COMPANY,**
**and JOHN DOES 1–5** **DEFENDANTS**

# OPINION AND ORDER

After Allstate Vehicle and Property Insurance Company denied their insurance claim for damage to the roof of their home, Tim and Rhonda Alldread sued Allstate asserting claims for policy benefits and breach of contract along with several claims for extracontractual damages. Allstate moves to dismiss the claims for extracontractual damages for failure to state a claim. Because the allegations in the Alldreads' complaint are sufficient to support all their claims except their claims for negligence and gross negligence, the motion to dismiss will be granted in part and denied in part.

## I
## Procedural History

On April 22, 2026, Tim and Rhonda Alldread filed a complaint in the United States District Court for the Northern District of Mississippi against Allstate Vehicle and Property Insurance Company, alleging that Allstate wrongfully denied their claim for damage to the roof of their home caused by a severe wind and hailstorm. Doc. #1. The complaint contains six counts: "Count I – Claim for Policy Benefits," "Count II – Breach of Contract," Count III – Tortious Breach of Contract, "Count IV – Breach of Covenant of Good Faith and Fair Dealing," "Count V – Claim for Bad Faith Failure to Pay Benefits, Bad Faith Delay, and Bad Faith Investigation," and "Count

VI – Negligence and Gross Negligence." *Id.* at 7–10. On their claims, the Alldreads demand "compensatory damages, special damages, emotional distress damages, incidental and consequential damages, plus attorneys' fees and costs, *Veasley* damages, punitive damages, and pre-judgment and post-judgment interest." *Id*. at 11.

On May 29, Allstate filed its answer and affirmative defenses in which it asserts, among other things, "that the Complaint fails to state any claim for extracontractual damages upon which relief can be granted and [it] is filing a contemporaneous motion to dismiss said claims."[1] Doc. #7 at 1. That same day, Allstate then filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) requesting "the dismissal of Count III – Tortious Breach of Contract; Count IV – Breach of Covenant of Good Faith and Fair Dealing; Count V – Claim for Bad Faith Failure to Pay Benefits, Bad Faith Delay, and Bad Faith Investigation; [and] Count VI – Negligence and Gross Negligence, including the demands for extracontractual damages including *Veasley* damages and punitive damages." Doc. #9 at 1–2. The plaintiffs responded in opposition on June 12. Doc. #12. Allstate did not reply.

## II
## Rule 12(b)(6)[2]

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) asserts a "failure to state a claim upon which relief can be granted." To survive dismissal under the Rule 12(b)(6) standard,

[1] United States Magistrate Judge Jane M. Virden granted Allstate's motion for an extension through May 29 to answer or otherwise respond to the complaint. Doc. #6.

[2] "Technically, a post-answer Rule 12(b)(6) motion is untimely and some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the failure to state a claim for relief." *Round Rock Ind. School Dist. v. Amy M.*, 540 F. Supp. 3d 679, 693 (W.D. Tex. 2021) (cleaned up) (quoting *Delta Truck & Tractor, Inc. v. Navistar Int'l Transp. Corp*., 833 F. Supp. 587, 588 (W.D. La. 1993)). "If the defendant has previously included in its answer the defense raised in the motion, thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer" but they consider such a motion "as a Rule 12(c) motion for judgment on the pleadings." *Id.* The standard to evaluate a Rule 12(c) motion is the same as a Rule 12(b)(6) motion. *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). So, whether the Court treats the motion as one pursuant to Rule 12(b)(6) or one pursuant to Rule 12(c), the analysis and outcome is the same.

"a complaint must present enough facts to state a plausible claim to relief. A plaintiff need not provide exhaustive detail to avoid dismissal, but the pleaded facts must allow a reasonable inference that the plaintiff should prevail." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1150 (5th Cir. 2021) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (internal quotation marks omitted) (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* In evaluating a Rule 12(b)(6) motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

## III
## <u>Factual Allegations</u>

Prior to December 9, 2023, Allstate Vehicle and Property Insurance Company issued to Tim and Rhonda Alldread Policy No. 810130270, which provided coverage to their home for damage sustained as a result of wind and/or hail. Doc. #1 at 2. On December 9, 2023, a severe wind and hailstorm passed through Grenada County, Mississippi, and caused significant damage to the roof of the Alldreads' home. *Id.* Following the storm, the Alldreads reported the loss to Allstate. *Id.* On May 14, 2024, Allstate sent an insurance adjuster to the home to perform an inspection. *Id.* at 3. The adjuster did not conduct a thorough investigation and ignored signs of wind and hail damage. *Id.*

On May 15, 2024, Allstate denied the Alldreads' claim. *Id.* After the Alldreads requested Allstate to reconsider its denial, Allstate sent a second adjuster to inspect the home on June 27, 2024. *Id.* The second adjuster took pictures of damage to the roof and labeled the pictures as "hail damage." *Id.* Allstate again denied the Alldreads' claim on May 6, 2025. *Id.* at 4.

At some point between May and August 2025, the Alldreads' claim was reassigned to a third adjuster, who reviewed the photographs from the June 27, 2024, inspection and conducted a third inspection on August 15, 2025. *Id.* The third adjuster advised the Alldreads' public adjuster, Jonathan Alexander, that he would be writing an estimate for a full replacement of the roof. *Id.*

On August 16, 2025, the third adjuster informed Alexander that his estimate was rejected by his manager, the claim would again be denied, and he did not know the reason for the denial. *Id.* The third adjuster produced a report estimating $5,516.97 in damage but Allstate scratched out the line items in the report and represented that there was $0.00 in covered damage. *Id.* Allstate sent the Alldreads a third denial letter which did not contain an explanation for the denial, a citation to the policy exclusion supporting the denial, or the signature of the individual who made the decision to deny coverage. *Id.*

On August 21, 2025, Alexander asked Allstate who made the denial decision and why the denial conflicted with the second and third adjusters' assessments. *Id.* at 4–5. On September 2, 2025, Allstate responded that no additional coverage would be extended and the coverage decision remains as is. *Id.* at 5. The same day, Allstate's agent Patrick Thimmes replied to Allstate asking if the claim could be reviewed again. *Id.* On September 5, 2025, Allstate responded that the denial was based on a policy exclusion for "wear and tear" to the roof. *Id.*

To date, the Alldreads' home has suffered over $40,000.00 in damage that remains unpaid by Allstate. *Id.* at 6.

## IV
## Analysis

Allstate submits that "[b]ecause the [Alldreads'] Complaint does not plead sufficient facts to support any of the extracontractual claims and therefore fails to state a plausible claim for relief, all the claims other than the breach of contract claims should be dismissed under Rule 12(b)(6)." Doc. #9 at 1. The Alldreads respond that "[b]ecause [they] have alleged specific facts sufficient to support each of their claims, and because those facts must be accepted as true at this stage of the proceedings, Allstate's Motion to Dismiss … should be denied in its entirety." Doc. #12 at 2 (emphasis omitted).

### A. Bad Faith

Allstate argues that "[t]he Complaint's allegations of bad faith are mere conclusory assertions because the [Alldreads] did not include sufficient *factual* allegations indicating actions by [it] other than those underpinning the breach of contract claim." Doc. #10 at 5.

The Alldreads respond that they "have adequately pled a claim for bad faith adjusting against Allstate" because their complaint contains "detailed factual allegations that paint a clear picture of Allstate's utter refusal to adjust [their] claim in good faith," specifically that "Allstate ignored the photo reports and estimates of two of its own adjusters …, intentionally removed those items from its adjuster's report that evidenced covered damage, ignored its adjusters' photographs which chalked and labeled the damage to the roof as hail damage, and ignored the pleas of its own agent to reconsider its erroneous and bad faith denial." Doc. #13 at 8, 10 (emphasis omitted). The Alldreads further argue that Allstate's cited authorities contain "the same boilerplate allegations" and "[u]nlike those plaintiffs, [they] have adequately alleged facts which undeniably indicate that Allstate failed to adjust [their] claim in good faith." *Id.* at 13 (emphasis omitted).

"Under Mississippi law, insurers have a duty 'to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation' and may be liable for punitive damages for denying a claim in bad faith."[3] *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008) (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003)). "[A] bad faith refusal claim is an 'independent tort' separable in both law and fact from the contract claim asserted by an insured under the terms of the policy." *James v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 65, 69 (5th Cir. 2014) (quoting *Spansel v. State Farm Fire & Cas. Co.,* 683 F. Supp. 2d 444, 447 (S.D. Miss. 2010)).

To recover on their bad faith claims, the Alldreads must show "(1) 'that the claim or obligation was in fact owed,' (2) that Allstate 'has no arguable reason to refuse to pay the claim or to perform its contractual obligation,' and (3) that Allstate's 'breach of the insurance contract results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort.'" *Loshelder v. Allstate Prop. & Cas.*, 820 F. Supp. 3d 440, 444 (S.D. Miss. 2026) (quoting *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008)). "[T]he [Alldreads'] burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit." *Windmon v. Marshall*, 926 So. 2d 867, 873 (Miss. 2006) (quoting *McKneely,* 862 So. 2d at 534).

The Alldreads' complaint includes claims for bad faith failure to pay benefits, bad faith delay, and bad faith investigation. Doc. #1 at 8. They allege that, among other things, Allstate

---

[3] In this diversity action, the Court applies the law of the forum state. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019).

"refused to provide coverage for the roof of the Home despite two (2) of [its] adjusters conducting inspections and finding that there was covered damage to the roof of the Home," "scratched out line items in its own adjuster's estimate which identified damage to the roof of the Home that was covered under the terms of the Policy," and "ignored photographs taken by its own adjuster which labeled the damage to the Home as hail damage." Doc. #1 at 5–6 (emphases omitted).

Contrary to Allstate's characterization, these are specific factual allegations that, taken as true, are sufficient to state a claim for bad faith. The allegations in the complaint support a finding that Allstate ignored clear evidence of covered damage from multiple of its own adjusters and therefore had no arguable basis to deny the Alldreads' claim; and that its breach of the insurance policy in that regard was intentional or at least grossly negligent, because a proper investigation would have (and did) easily show that there was hail damage to the roof. *See Loshelder*, 820 F. Supp. 3d at 444 (bad faith claim sufficiently stated when plaintiff "claim[ed] his public adjuster's report indicated that hail damaged the roof, but Allstate 'summarily ignored' this report;" and "Allstate ignored the chalk markings on [its third party adjuster's] report that 'documented clear hail damage,' failed to properly test the roof, and failed to properly notify [plaintiff] of the reasons his claim was denied"); *Baker v. Allstate Indem. Co.*, No. 1:23-CV-57, 2024 WL 1200433, at *2 (N.D. Miss. Mar. 20, 2024) ("[A]llegations that Allstate ignored proof that a storm occurred and caused damage to the roof of [plaintiff's] rental property … support her bad faith claim[.]"); *Williams v. Allstate Indem. Co.*, No. 4:22-CV-79, 2022 WL 17254306, at *3 (N.D. Miss. Nov. 28, 2022) ("Because the complaint alleges Allstate denied the claim [because the property was vacant] despite being provided evidence the property was occupied ninety days before the fire, it adequately alleges Allstate lacked an arguable or legitimate basis for denying the claim."). Accordingly, the complaint states a claim for bad faith against Allstate.

### B. Tortious Breach of Contract

Regarding the tortious breach of contract claim, Allstate reiterates that "the [Alldreads] have not pleaded facts that, if true, would prove a claim for anything other than breach of contract." Doc. #10 at 8. The Alldreads respond that their "tortious breach of contract [claim] survives the lenient standard that is Rule 12(b)(6) because [they] have pled detailed, specific factual allegations which indicate that Allstate has committed intentional wrongs and/or acted with gross negligence as it violated the terms of the insurance policy." Doc. #13 at 15.

"A tortious breach of contract is a breach of contract coupled with 'some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort.'" *Robinson v. S. Farm Bureau Cas. Co.*, 915 So. 2d 516, 520 (Miss. 2005) (quoting *Wilson v. Gen. Motors Acceptance Corp.,* 883 So. 2d 56, 66 (Miss. 2004)). As Allstate acknowledges,[4] the complaint states a claim for breach of contract because the Alldreads allege that Allstate wrongfully denied their claim for damage covered under the insurance policy. And for the same reasons explained above regarding their bad faith claim, the Alldreads allege facts to support a finding that Allstate acted intentionally or was grossly negligent in wrongfully denying their claim. So, the complaint also states a claim for tortious breach of contract.

### C. Breach of Covenant of Good Faith and Fair Dealing

Allstate argues that "[f]or the same reasons that the [Alldreads'] claim of bad faith should be dismissed, [their] claim for breach of good faith and fair dealing should be dismissed under Rule 12(b)(6)" because "this is at most a simple breach of contract claim involving the interpretation and application of policy provisions." Doc. #10 at 9–10. The Alldreads counter that while "[their] expectations … were that Allstate would adhere to its duty to perform a prompt and

[4] Doc. #10 at 8.

adequate investigation and ultimately make a good faith, realistic evaluation of the claim," "[i]nstead, Allstate ignored the evidence provided by two of its own adjusters, as well as the pleas of its own insurance agent, and denied the claim due to alleged wear and tear;" and "rather than take 'affirmative action' to comply with its duties under Mississippi law and the insurance policy, Allstate took affirmative steps to ignore evidence, delay, and ultimately deny [their] claim." Doc. #13 at 17.

"[A]ll contracts contain an implied duty of good faith and fair dealing in performance and enforcement." *Holcomb, Dunbar, Watts, Best, Masters & Golmon, P.A. v. 400 South Lamar Oxford Mad Hatter Partners, LLC*, 335 So. 3d 568, 574 (Miss. 2022) (quoting *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992)). Good faith is "the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." *Caplinger v. Whitney Bank*, 293 So. 3d 307, 312 (Miss. Ct. App. 2020) (quoting *Cenac*, 609 So. 2d at 1272). "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 657 (S.D. Miss. 2013) (quoting *Harris v. Miss. Valley State Univ.,* 873 So. 2d 970, 987 (Miss. 2004)). Breach of good faith requires more than "[b]ad judgment or negligence" but instead requires "some conscious wrongdoing because of dishonest purpose or moral obliquity." *Montgomery*, 955 F. Supp. 2d at 657 (quoting *Lippincott v. Miss. Bureau of Narcotics,* 856 So. 2d 465, 468 (Miss. Ct. App. 2003)).

Again, for the same reasons the complaint states claims for bad faith and tortious breach of contract, the Alldreads allege sufficient facts demonstrating that Allstate acted unreasonably and unfairly, and that it consciously wrongfully denied their claim, when it disregarded the results of multiple of its own adjusters' inspections and concluded, without a legitimate basis, that the

damage was excluded. *See Easter Common Haimur v. Allstate Prop. & Cas. Ins. Co.*, No. 3:20-CV-483-CWR-FKB, 2021 WL 3828440, at *4 (S.D. Miss. Aug. 26, 2021) (allegations that insurer "refused and/or failed to timely process the insurance claim and then denied the insurance claim without an arguable or legitimate basis and based on an improper and incomplete investigation" were sufficient to state claim for breach of duty of good faith and fair dealing). The Alldreads' claim for breach of the covenant of good faith and fair dealing will not be dismissed for failure to state a claim.

**D. Negligence and Gross Negligence**

Allstate contends that "[t]o the extent that the [Alldreads] intended to assert a claim for simple negligence, their Complaint does not include a single factual allegation to distinguish a claim of negligence from the claim for breach of contract;" and as to the gross negligence claim, "[t]here are no factual allegations in [the Alldreads'] Complaint that [it] engaged in … conduct [which discloses a reckless indifference to consequences]." Doc. #10 at 10, 11.

The Alldreads respond that "[their] gross negligence claim survives for the same reason that their bad faith adjusting claim survives," because "[they] have alleged detailed, non-conclusory facts which, when taken as true and viewed in the light most favorable to [them], show that Allstate acted with 'a reckless indifference to consequences without the exertion of any substantial effort to avoid them;'" and "[i]n fact, [their] allegations indicate that Allstate exerted 'substantial effort' to make sure that the consequences, i.e., the erroneous denial of [their] claim and [their] subsequent financial loss and emotional distress, would occur." Doc. #13 at 13, 14 (quoting *Ezell v. Bellsouth Telecomms., Inc.*, 961 F. Supp. 149, 152 (S.D. Miss. 1997)).

"[T]he breach of a contract (whether described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care

recognized by tort law." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 993 n.2 (Miss. 2021) (quoting *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015)). "There must be a duty of care 'fixed by law and *independent of the contract*.'" *Clausell*, 158 So. 3d at 391 (emphasis added) (quoting *Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 624 (Miss. 1964)).

The Alldreads allege that Allstate had an "obligation to ensure that [they] were provided full and comprehensive coverage for the Home;" and "Allstate breached the aforementioned obligation and/or duty in failing to adequately inspect, handle, and adjust the damage to the Home." Doc. #1 at 10. The Alldreads do not allege a breach of duty distinct and independent from their breach of contract claim as required to bring separate negligence and gross negligence claims. *See Nelson v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:26-cv-17, 2026 WL 2497815, at *6 (N.D. Miss. Aug. 25, 2026) (dismissing gross negligence claim because "the factual allegations underlying [it] are identical to those supporting [plaintiff's] breach of contract and bad-faith claims;" and the "complaint does not identify any separate conduct constituting an independent tort of gross negligence apart from Allstate's denial of the insurance claim"); *Baker*, 2024 WL 1200433, at *3 ("Baker's argument that Allstate failed to adequately investigate her claim is not independent of the contract, and she has not alleged any independent breach that would support a negligence claim."); *Stokes v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:25-CV-60, 2026 WL 353430, at *3–4 (N.D. Miss. Feb. 9, 2026) (dismissing negligence and gross negligence claims because plaintiffs failed to allege breach of duty independent from contract).

While the Alldreads cite *Loshelder* in arguing that they stated a claim for gross negligence,[5] the court in *Loshelder* did not find that the plaintiff there stated an independent claim for gross negligence, but rather that the plaintiff alleged gross negligence sufficient to support his claims for

[5] Doc. #13 at 14.

bad faith and tortious breach of contract. 820 F. Supp. 3d at 445. That the Alldreads stated claims for bad faith and tortious breach of contract here does not mean they may bring a separate claim for negligence or gross negligence when they do not allege a breach separate from their breach of contract claim. *See Nelson*, 2026 WL 2497815, at *6 ("While the allegations of gross negligence/reckless disregard are, for pleading purposes, sufficient to support Nelson's bad faith claim … they are not sufficient to support this alleged separate [gross negligence] claim ….").  Accordingly, the Alldreads' negligence and gross negligence claims will be dismissed.

**E. *Veasley* Damages**

Allstate argues that "the [Alldreads] did not plead a claim for *Veasley* damages" because they "did not sufficiently allege that [it] lacked an arguable basis for its denial." Doc. #10 at 12.

The Alldreads counter that "[they] have undoubtedly pled sufficient allegations to state a claim for bad faith adjusting under Mississippi law and, therefore, have pled sufficient allegations to show that Allstate lacked an arguable basis for its erroneous denial of [their] claim." Doc. #13 at 13 n.10.

*Veasley* damages "may be appropriate where the insurer lacks an arguable basis for delaying or denying a claim, but the conduct was not sufficiently egregious to justify the imposition of punitive damages." *Essinger*, 534 F.3d at 451 (citing *Universal Life Ins. Co. v. Veasley,* 610 So. 2d 290, 295 (Miss. 1992)).[6] Because, as discussed above, the Alldreads sufficiently allege that Allstate lacked an arguable basis for denying their claim, their request for *Veasley* damages will not be dismissed.

---

[6] "[*Veasley*] damages are an intermediate form of relief between simply receiving incidental costs of suit (but not attorneys' fees), and getting punitive damages." *Essinger*, 534 F.3d at 451.

### F. Punitive Damages

Allstate argues that “there was no denial of coverage in the case at bar;” “[s]ince the [Alldreads] did not adequately plead a claim of bad faith, it necessarily follows that they did not plead a claim for punitive damages for bad faith;” and “since the [Alldreads] did not plead any plausible claim for relief against [it] other than simple breach of contract, there is no other basis for an award of punitive damages.” Doc. #10 at 13. The Alldreads respond that “[they] have adequately stated a claim for bad faith under Mississippi law,” and “[they] allege that their claim was denied.” Doc. #13 at 11 n.6.

“Punitive damages may be imposed for breach of contract where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts an independent tort.” *Papin v. Univ. of Miss. Med. Ctr.*, 673 F. Supp. 3d 829, 843 (S.D. Miss. 2023) (quoting *Tideway Oil Programs, Inc. v. Serio*, 431 So. 2d 454, 465–66 (Miss. 1983)). Because, as explained in addressing the Alldreads’ bad faith and tortious breach of conflict claims, the complaint meets this standard, the Alldreads’ punitive damages claim will not be dismissed.

## V
## Conclusion

Allstate’s motion to dismiss [9] is **GRANTED in Part and DENIED in Part**. The motion is GRANTED to the extent the Alldreads’ negligence and gross negligence claims are dismissed. The motion is DENIED in all other respects.

**SO ORDERED**, this 5th day of November, 2026.

**/s/Debra M. Brown**
**UNITED STATES DISTRICT JUDGE**